Robert **BOEHM** and Catherine **Boehm**,
Plaintiffs-Appellees,

v.

**Wayne F. FOX et al., Defendants-
Appellants.**

No. 72-1417.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 9, 1973.

Decided Feb. 7, 1973.

**446**

Robert W. Green, Ottawa, Kan., for plaintiffs-appellees.

William Koehn, Des Moines, Iowa (Felix G. Kancel, Jr., Kansas City, Kan., on the brief), for defendants-appellants.

Before BREITENSTEIN, Mc-WILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The Boehms filed a complaint for damages against Triple "F" Feeds resulting from the use of a feed additive known as Proto-Tone fed to the Boehms' dairy herd. The complaint was based on alternative theories, one of negligence, the other on breach of express and implied warranties. Triple "F" Feeds appeals from the jury award and subsequent judgment allowing the Boehms $9,000.00 in compensatory damages and $7,500.00 in punitive damages.

The Boehms operate a dairy farm in Franklin County, Kansas. On September 30, 1968, Eldon Fuller, a part-time salesman for Triple "F" sold Mr. Boehm 50 pounds of a feed additive called "Proto-Tone 336, Medicated". Fuller told Boehm that his herd would realize 25% more milk production and that the additive would not hurt the dairy cattle. Fuller instructed Boehm to feed four pounds more feed per day to each cow,

together with two ounces of Proto-Tone, per head per day.

About October 1, 1968 Boehm began feeding his dairy herd Proto-Tone. Total milk production increased but at the end of October the cattle began looking skinny. During November the cows quit eating. They became thinner and milk production dropped. On November 8, 1968 Boehm called a veterinarian, W. H. Hay, D.V.M. The herd was sick, nervous, had mastitis, and ketosis. Hay recommended that the herd be removed from Proto-Tone. This sudden withdrawal decreased the milk production, so Mr. Boehm and the veterinarian consulted the Triple "F" manager who told them to return Proto-Tone to their diets at one-half of the prior dosage. He stated that the product should never be withdrawn suddenly from a herd. The cattle remained sick and their milk production stayed down.

Mr. Boehm testified that he increased the cattle's feed from 24 pounds per day to 34 pounds per day. Another witness stated that Boehm did not increase their feed. Boehm sold 4 cows in March and 5 cows in May of 1969 because they were not producing. He testified that he sold the cows for less than their value because of their sickness; that the value of his herd decreased after using Proto-Tone; that he had to pay for veterinary services; and that he had to spend extra time in caring for the herd.

Triple "F" contends that the trial court erred: (1) in submitting the issue of punitive damages to the jury; (2) by admitting Mr. Boehm's testimony based on summaries not in evidence; (3) in submitting the issues of breach of express or implied warranty to the jury; and (4) in allowing Mr. Vaupel to testify on rebuttal.

## I.

Triple "F" alleges that the trial court erred in submitting the issue of punitive damages to the jury because there was no evidence of gross negligence or wanton or willful conduct. It contends that its motion for a directed verdict should have been granted.

Under Kansas law punitive damages are allowed in cases where there is malice, fraud or a willful and wanton disregard of the rights of others. Worden v. Tri-State Insurance Company, 347 F.2d 336 (10th Cir. 1965). Wantonness is characterized by a realization of the imminence of damage to others and a restraint from doing what is necessary to prevent the damage because of indifference as to whether it occurs.

Although the Boehms alleged certain facts which, if proved, might justify punitive damages, the Court held that the only evidence which would justify a jury instruction on punitive damages was Mr. Fuller's failure to instruct the Boehms that the product had to be withdrawn gradually. The record discloses that Fuller was a part-time salesman who had no training other than information he received from his area supervisor when he sold Boehm the Proto-Tone. A month later Fuller went to a school to learn about the products he had been selling. Although Fuller testified that he told Boehm to withdraw Proto-Tone gradually, this was disputed by Boehm who stated that he was not told anything about withdrawal. On cross-examination Fuller admitted that he was not sure whether he had told Boehm how to withdraw the product. However, Fuller said that he gave Boehm some pamphlets about Proto-Tone, including Bulletin 871 (Exhibit A), which explained how to withdraw it. Mr. Boehm, on the other hand, said that he did not receive Bulletin 871. On June 2, 1969, in a statement to a Mr. Winter, Fuller expressed some doubt about whether he had given Mr. Boehm Bulletin 871. These conflicts in the testimony were issues of fact to be resolved exclusively by the jury. Jaeco Pump Company v. Inject-O-Meter Manufacturing Company, 467 F.2d 317 (10th Cir. 1972). Jurors are the exclusive judges of the credibility and weight to be given to the testimony of any witness. United States v. Plemons, 455 F.2d 243 (10th

Cir. 1972); United States v. Frazier, 434 F.2d 238 (10th Cir. 1970). Jury determinations and awards are presumed correct and will not be preempted unless they are clearly against the weight of the evidence. Champion Home Builders v. Shumate, 388 F.2d 806 (10th Cir. 1967). There was substantial evidence on which the jury could rely in allowing punitive damages in that the Boehms were not told how to withdraw the product.

## II.

Triple "F" contends that the trial court erred in admitting Boehm's testimony relating to loss of milk production from summaries he had taken from records not in evidence because the testimony was hearsay, speculative and improper opinion, lacking proper foundation to prove damages. Triple "F" argues that since neither the summary nor the records upon which it was based were introduced into evidence, it was error to permit Boehm to refer to the summary in violation of the best evidence rule.

Mr. Boehm testified from a summary prepared in his own handwriting taken from voluminous records made by his milk hauler relating to his milk production losses after using Proto-Tone. He testified that his milk production in November, 1968, was down 5,000 pounds from November, 1967; that it was down 9,984 pounds in December, 1968, as compared to December, 1967; that it was down 6,430 pounds in January, 1969, as compared to January, 1968; that it was down 12,237 pounds in March, 1969, from March, 1968; and that it was down 13,-000 pounds in May, 1969, from May, 1968. Boehm testified that his total milk production loss was 76,510 pounds although the monthly figures totalled 46,-541. The product was gradually withdrawn beginning in November, and the last dosage was given in February, 1969. The Court allowed the jurors to compute losses up to 11 months, from October, 1968, through September, 1969.

Mr. Boehm also testified that his average pay per 100 pounds of milk from October, 1968, through September, 1969, was $5.50 per 100 pounds gross weight and that he had checks to establish his cost per 100 pounds per month. The checks were not introduced into evidence. Triple "F" objected to his testimony as inadmissible on the grounds of incompetency of the witness, failure to lay a foundation and because the testimony was based on hearsay.

Damages will not be awarded when the evidence surrounding them is uncertain or speculative. Jaeco Pump Company v. Inject-O-Meter Manufacturing Company, *supra*. Summaries may be testified from if the supporting documents are available. Ryder Truck Rental, Inc. v. National Packing Company, 380 F.2d 328 (10th Cir. 1967). A witness may testify from summaries if they refresh his recollection and the weight to be given to his testimony is for the trier of fact. State v. Collins, 204 Kan. 55, 460 P.2d 573 (1969).

The record discloses that when Triple "F"s counsel asked Boehm on cross-examination whether he would bring the records upon which his summaries were predicated into court, Boehm said that he would. Triple "F" did not request that Boehm produce the records. By failing to insist on production of the records, Triple "F" waived its rights on appeal to object to Boehm's challenged testimony on the grounds that it was hearsay and not the best evidence. Furthermore, we note that Triple "F" introduced into evidence the records from Mid-America Dairy showing Boehm's payroll records and establishing his milk production losses. These records were undoubtedly considered by the jury in arriving at its award of damages together with Boehm's testimony relating to the loss of production.

Mr. Boehm's opinion that his average pay per 100 pounds was $5.50 was also admissible. A witness may give an opinion when he has personal knowledge of the facts. His testimony

about the average pay was also admissible in that it was corroborated by the records of Mid-America Dairy introduced by Triple "F".

The compensatory damage award is supported by substantial evidence.

### III.

Triple "F" alleges that the trial court erred as a matter of law in submitting instructions on the issues of breach of express or implied warranty in that there was no evidence to support them.

An express warranty is any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. K.S.A. 84–2–313 (1965). An implied warranty of fitness for a particular purpose occurs where the seller knows the particular purpose the goods are required for and the buyer relies on the seller's skill in selecting suitable goods. K.S.A. 84–2–315 (1965). The expression of an opinion by the seller does not create an express warranty. Topeka Mill & Elevator Co. v. Triplett, 168 Kan. 428, 213 P.2d 964 (1950). The burden of proof is on the moving party to show facts giving rise to a warranty but the jury must ultimately determine whether those facts give rise to an express warranty. Naaf v. Griffitts, 201 Kan. 64, 439 P.2d 83 (1968). An implied warranty will be imposed by operation of law on the basis of public policy and privity of contract is not essential. Evangelist v. Bellern Research Corporation, 199 Kan. 638, 433 P.2d 380 (1967).

The record reveals that Fuller told Boehm that Proto-Tone would increase his milk production 25% and that it would not hurt his dairy herd. Triple "F" alleges that the guarantee of 25% more milk production is not an express warranty because it was premised by Mr. Fuller's statement to Mr. Boehm that there would not be a 25% increase unless Boehm maintained D.H.I.A. records. Boehm did not keep D.H.I.A. records. Notwithstanding, there was sufficient evidence from which the jury could find an express warranty because Fuller told Boehm that Proto-Tone would not hurt his cattle. There was also substantial evidence from which the jury could find an implied warranty of fitness for a particular purpose because Boehm relied on Fuller's judgment in selecting the product and because Fuller knew the particular purpose the product was required for.

### IV.

Triple "F" contends that the trial court erred in allowing Mr. Vaupel to testify about Proto-Tone on rebuttal because his testimony went beyond the case in chief; there was not a proper foundation to compare his herd with the Boehm herd; and the evidence was irrelevant, incompetent and immaterial. Vaupel was a rebuttal witness for the Boehms after Triple "F" had elicited testimony from a Mr. Hiatt as to his satisfactory experience with Proto-Tone in his dairy farm operations. When Triple "F" objected to Vaupel's testimony, the Court ruled that since a satisfied user had testified for Triple "F", the Boehms could introduce the testimony of a dissatisfied user. The jury was instructed to disregard any conclusion Vaupel made as to what caused the problems with his dairy herd. Vaupel testified that he used Proto-Tone on his dairy herd and that he was not satisfied with it. The trial court did not abuse its discretion in admitting Vaupel's testimony for the limited purpose of rebutting the testimony given by Mr. Hiatt.

Affirmed.