**Robert PANGER, Appellee,**

v.

**DULUTH, WINNIPEG AND PACIFIC RAILWAY COMPANY, Appellant.**

**No. 73–1398.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1973.

Decided Jan. 11, 1974.

---

**1114**

Tyrone P. Bujold, Duluth, Minn., for appellant.

John C. Boylan, Minneapolis, Minn., for appellee.

Before GIBSON and ROSS, Circuit Judges, and SMITH, Senior District Judge.*

GIBSON, Circuit Judge.

Defendant, Duluth, Winnipeg & Pacific Railway Co. (DW&P), appeals an $85,000 judgment entered on a jury verdict rendered in favor of its employee, Robert Panger, in this Federal Employers' Liability Act[1] action for injuries sustained by Panger during the course of his employment.

---

* The Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 45 U.S.C. §§ 51–60. Section 51 predicates liability on negligence "in whole or in part"

---

The plaintiff was employed as a bridge carpenter by DW&P, his job involving the building and repairing of railway bridges. On September 16, 1971, and since September 1, 1971, he was serving as a temporary lead hand due to the vacation of the regular lead hand, Mr. Tappa. The duties of a lead hand are similar to those of a sub-foreman and include the supervision of the activities of a work crew. The accident occurred September 16, 1971. Panger suffered a dislocated left shoulder and a fractured right shoulder.

On that date, Panger and the other members of the work crew arrived at Whiteface, a station on DW&P's tracks north of Duluth, Minnesota, at approximately 7:15 a. m. Panger, in accordance with his instructions, obtained a line-up which listed the movements of trains in the vicinity from a DW&P dispatcher at approximately 7:30 a. m. This line-up disclosed a southbound freight that left Virginia, Minnesota, north of Whiteface, at 6:40 a. m., a northbound freight which left Duluth at 5:10 a. m., and a work train somewhere on the line between Virginia and Harney, Minnesota, which is south of Whiteface.

Panger's work crew had been assigned to install culvert ends on a section of track north of Whiteface. On the two previous days the crew had remained at Whiteface painting boxcars due to heavy rail traffic and the presence of the work train. They could only reach their job site by use of a gasoline-powered motorcar which operated upon the railroad tracks. It was necessary before putting the motorcar upon the tracks to know what trains were on the single track between Duluth and Virginia in order to avoid a collision. The line-up procedure was used by the DW&P for this purpose. After receiving the line-up on the 16th, the crew decided that they would

of the carrier, its officers, agents or employees or "by reason of any defect or insufficiency, due to its negligence, in its cars, * * * or other equipment."

wait until the northbound freight from Duluth passed the station and then proceed behind it to their job site, thus gaining its interference against any southbound traffic. The testimony of Mr. Tack, the foreman of the work crew, indicated that although he felt this was an unsafe practice, he had engaged in it himself.

The crew observed the southbound freight pass Whiteface; they then waited for the northbound freight from Duluth. After it passed, they placed the motorcar upon the tracks; this took approximately five minutes and by this time the northbound train was out of sight. They then proceeded some three miles north of Whiteface and were on a sharp curve when they spotted the engine of the work train coming in their direction. Panger and other members of the crew jumped from the motorcar and in so doing Mr. Panger suffered the injuries involved in this suit. Mr. Seehus, the motorcar operator, remained on the motorcar until he brought it to a stop and then jumped. The motorcar was struck by the work train and driven some 300 feet down the tracks from the point of impact.

■ DW&P contends that all the negligence involved in the accident, if any, should be imputed to Panger since he was acting in a supervisory capacity. Further, the negligence causing the accident was either Panger's decision to place the motorcar on the tracks, knowing that a work train was in the vicinity, or in Panger permitting his crew to place the motorcar on the tracks under the circumstances. DW&P asserts that it should have been granted a directed verdict or a judgment N.O.V. At trial, there was a factual dispute between the parties as to whether it was one of Panger's duties to decide when the motorcar should be used. Further, if the railroad was negligent in not including the direction of movement of the work train in the line-up or equipping motorcars with radios as argued, this negligence would not be imputed to Mr. Panger even if he were acting in a supervisory capacity.

These questions were properly left to the jury to determine.

> Under this statute [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.

Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957), and

> [F]or practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of this suit.

*Rogers, supra* at 508, 77 S.Ct. at 449.

We think there was evidence before the jury which would justify with reason a conclusion that there was at least some employer negligence involved in the accident, and thus defendant was not entitled to a directed verdict or judgment N.O.V.

The defendant presents several challenges to the trial court's actions in admitting and excluding evidence. It argues that it was error: (1) to allow plaintiff to testify as to how the accident might have been avoided, (2) to refuse to allow proof that the line-up procedure employed was an accepted practice in the railway industry, and (3) to admit evidence of railway disciplinary proceedings. Defendant also claims prejudice in an instruction and in argument of plaintiff's counsel.

■■ The trial court allowed Panger to testify as to how the accident might have been avoided. Defendant objected, claiming that it was an "expert" opinion and that Panger lacked the requisite qualifications. Although the decision as to the admission and exclusion of testimony generally lies within the discretion of the trial court, Skogen v. Dow Chemical Co., 375 F.2d 692, 704 (8th Cir. 1967); Cotton v. United States, 361 F. 2d 673, 676 (8th Cir. 1966), there should be basic guidelines applicable to opinion

and conclusionary type evidence, such as that admitted here. What should have been done to avoid the type of accident in question? We do not think, nor did the District Court, that Panger's testimony was subject to the qualifications placed upon expert testimony. He definitely was not proposed as an expert in this field. The trial court, upon timely objection, merely ruled that he was a competent witness. Being a lay witness, he could not give an expert opinion but he should be permitted to give his opinion, for whatever weight the jury may care to give it, based upon his own personal knowledge of the facts, so long as those facts appear in the record. *See,* Boehm v. Fox, 473 F.2d 445, 448 (10th Cir. 1973); Gray v. Shell Oil Co., 469 F.2d 742, 750 (9th Cir. 1972).

The Opinion Rule has been a source of confusion in the law of evidence, one which conveniently at times has been resolved by merely saying that the admission of opinion testimony is a matter within the trial court's discretion. The Advisory Committee's Note to the Proposed Federal Rules of Evidence, Rule 701,[2] states that "necessity as a standard for permitting opinions and conclusions has proved too elusive and too unadaptable to particular situations for purposes of satisfactory judicial administration." 51 F.R.D. 315, 402 (1971). Wigmore has called for its total abolition, reasoning:

> The Opinion rule day by day exhibits its unpractical subtlety and its useless refinement of logic. Under this rule we accomplish little by enforcing it, and we should do no harm if we dispensed with it. * * * We should do no harm, because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross-examination.

VII Wigmore, Evidence, § 1929 (3d ed. 1940).

It is unnecessary to adopt Wigmore's position in upholding the action of the trial court in this case. An employee injured in an industrial accident is not the ordinary lay witness having no greater experience with the methods of operation in an industry than the average juror. In the performance of his duties he will become more intimately acquainted with the methods of operation of the business than the average juror. His opinion as to how the accident might have been avoided should be admissible as based upon his experience in the industry. We do not say that such an employee qualifies as an expert, but neither should he be subject to the stricter limitations placed on the ordinary lay witness' testimony. His opinion as to the safety of certain business practices is entitled to whatever consideration the jury may feel it is worth in the circumstances of the case. The extent of his knowledge and the basis for his opinion are matters which may be challenged on cross-examination and his opinion rebutted by other witnesses. This would properly affect the weight of his testimony, not its admissibility.

There was evidence in the record that regular trains and work trains were equipped with radios to communicate with each other and the dispatcher, and evidence showing that the line-up used by DW&P indicated the direction of movement of regular trains but not work trains. Panger's conclusion that the accident might have been avoided by equipping the motorcars with radios or indicating the direction of movement of work trains on the line-up was based upon his personal knowledge of these

---

2. Rule 701 provides:

*Opinion Testimony by Lay Witnesses*

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

51 F.R.D. 315, 402 (1971).

facts. The trial court did not abuse its discretion in admitting this testimony, but should have made clear to the jury that this was lay testimony from the victim of the accident, and the defendant should have been accorded the right to counter that evidence with either factual evidence of its own or properly proffered expert testimony.

■ The DW&P attempted to elicit from their expert, Mr. Libra, the assistant superintendent of roadway maintenance for the Burlington Northern Railroad, evidence as to the common use of the line-up procedure by other companies in the railway industry. The trial court excluded this testimony. We are convinced that this was error and was substantially prejudicial to the Railway's case. The practices prevailing in an industry are some indication, although not controlling, of what a reasonable and prudent practice is, and should have been admitted. Kuberski v. New York Cent. R.R., 359 F.2d 90, 93, 95 (2d Cir. 1966); Thompson v. Camp, 163 F.2d 396, 402 (6th Cir. 1947).[3] The plaintiff was allowed to give his opinion regarding the use of the line-up. The line-up and what information was necessary to be included therein was very much an important aspect in this case. Although we cannot know upon what basis the jury found negligence on the part of the Railway, we think exclusion of this relevant testimony substantially prejudiced the Railway's attempt to justify its line-up procedure. We therefore reverse and remand for a new trial.

As other contentions of the defendant are likely to arise upon the new trial of this case, we will briefly discuss the remaining issues.

■■ DW&P contends that evidence of disciplinary proceedings should not have been admitted. Plaintiff says that the results of the proceedings are admissions, as they negate the Railway's contention that Panger was in sole charge of the work crew and motorcar. Evidence of these proceedings was used in two ways by the plaintiff. First, he introduced evidence that he was not disciplined. We think this was admissible. Plaintiff's Exhibit 37 was a December 3, 1971, letter from DW&P requiring plaintiff to attend a formal investigatory hearing, the purpose of which was to determine the responsibility for the accident. The fact that the plaintiff was not disciplined was a fact entitled to consideration by the jury. The conduct of a party which could give rise to an inference that the facts are not as he now claims is admissible where inconsistent with contentions at trial. Employers Mutual Cas. Co. v. Mosqueda, 317 F.2d 609, 612–613 (5th Cir. 1963); Buhl v. Kavanagh, 118 F.2d 315, 322 (6th Cir. 1941). See also IV Wigmore, Evidence, § 1060 (3d ed. 1940). That the Railway did not find Panger responsible in its disciplinary proceedings is inconsistent with its assertion of his responsibility at trial.

■ However, we do not think there was an adequate foundation for allowing evidence that Mr. Seehus, the motorcar operator, was disciplined as a result of the investigation. Standing alone, this does not give rise to an inference that the DW&P determined Mr. Seehus to be responsible. There is no showing as to why the discipline was administered. On the present state of the record, it is as likely that the discipline could have been for a technical infringement of rules not connected with the question of responsibility for the accident as it is that the discipline was for conduct contributing to the accident. If plaintiff lays a proper foundation we believe that this evidence, if it does indicate the

3. See also, II Wigmore, Evidence, § 461 at 493 (3d ed. 1940); 2 F. Harper & F. James, The Law of Torts, § 17.3 at 977–78 (1956):
By the great weight of modern American authority a custom either to take or to omit a precaution is generally admissible as bearing on what is proper conduct under the circumstances, but is not conclusive. Such evidence, coupled with testimony that the custom was observed may be offered to show due care.

Railway found someone other than Panger responsible, would be admissible as an admission at the new trial.

 The other contentions of error lack merit. Defendant claims that the court placed undue emphasis upon plaintiff's future wage loss in instructing the jury. No objection was made before the jury retired as required by Fed.R.Civ.P. 51. Further, the court suggested to defendant's benefit that the jury make no award for future pain and suffering, and defendant had previously agreed that there was enough evidence to go to the jury on the question of future loss of earnings. We think this issue was properly submitted by the court.

 Plaintiff's counsel in his closing argument to the jury stated that after the verdict was in it was "Goodbye, Bob." We think it clear that this referred to the evidence in the record that Panger was at present only doing light duty work and that after the trial if he could not do the heavy work required of bridge carpenters he would be terminated by the Railway. The court further gave a cautionary instruction to assure that there was no misunderstanding. This was permissible comment upon the evidence. Lastly, defendant challenges the verdict as excessive. This issue is not properly reviewable here. Such a challenge is properly made on a motion for new trial and not on review in the court of appeals. Chicago Great Western Ry. v. Casura, 234 F.2d 441, 448–449 (8th Cir. 1956); Glendenning Motorways v. Anderson, 213 F.2d 432, 437 (8th Cir. 1954). As noted in Chicago Great Western Ry., *supra* at 448–449:

> We have consistently held that in a tort action, at least where the verdict is not such as has been designated by the United States Supreme Court as "monstrous" or such as to shock the judicial conscience, the question of the excessiveness of the verdict is to be determined by the trial court on motion for new trial and cannot be considered as ground for reversal.

Although the matter is not properly before us, we do not view this verdict as monstrous or shocking to the judicial conscience.

The judgment is reversed and the cause remanded to the district court for further proceedings consistent with this opinion.