FLEMING BUILDING CO., INC., Appellant,

v.

NORTHEASTERN OKLAHOMA BUILD-
ING AND CONSTRUCTION TRADES
COUNCIL, Appellee.

No. 75–1278.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 29, 1976.

Decided March 19, 1976.

Mary T. Matthies, Kothe, Nichols & Wolfe, Inc., Tulsa, Okl. (Richard L. Barnes, Tulsa, Okl., on the brief), for appellant.

Maynard I. Ungerman, Ungerman, Grabel & Ungerman, Tulsa, Okl., for appellee.

Before LEWIS, BREITENSTEIN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Fleming Building Company, (Fleming), appeals from a judgment denying its claim for damages against the Northeastern Oklahoma Building and Construction Trades Council, (Council).

This action is based upon Section 303 of the Labor Management Relations Act, 29 U.S.C.A. § 187. The controversy giving rise to this suit occurred during the construction of a Pontiac dealership building in Tulsa, Oklahoma. Fleming was the general contractor for the construction of the building. A subcontract was entered into between Fleming and Beasley Plumbing and Heating Company. Beasley, a non-union plumbing contractor, agreed to perform plumbing work on the building. After Beasley commenced work at the job site, Fleming was informed that the Plumber Local Union No. 176 (Union) intended to picket the job. The

purpose of the picketing was to protest Fleming's subcontract with a non-union plumbing contractor.

Fleming attempted to avoid any dispute with the Union by soliciting bids from approved union plumbing contractors. Presumably, if a union contractor could equal Beasley's bid for the job, Beasley would be replaced. Fleming, however, subsequently informed Robert Smith, business agent for the Council,[1] that it was unable to attain any union bids as low as Beasley's and that it therefore intended to honor the subcontract with Beasley.

No agreement having been reached with Fleming, the Union picketed the job site on July 28 and 30, 1971. The Trial Court made the following finding concerning the picketing:

> The picketing on July 28, 1971, commenced sometime around 3:00 p.m. in the afternoon and the normal workday ceased at 4:30 p.m. That as a result of picketing, some individuals working on the job did not cross the picket line. That on July 30 the picketing ceased at approximately 3:00 p.m. and no further picketing or job stoppage of any type took place on the job as a result of the union picket. [R. Vol. 1, at 133]

Suit was brought against Union by Fleming. That action was settled by an agreement approved by the Regional Director of the National Labor Relations Board on August 23, 1971. By the terms of the agreement, Fleming withdrew charges filed with the N.L.R.B. against the Union.[2]

The controversy before us stems from charges filed by Fleming against the Council on August 19, 1971. Fleming asserted that the Council had committed unfair labor practices under Section 8(b)(4)(ii)(B) of the N.L.R.A., 29 U.S.C.A. § 158.[3] The charges against Council were heard before the Trial Examiner of the N.L.R.B. on October 21, 1971. His decision was rendered on December 30, 1971. He held that the Council had exerted pressure on Fleming to force Fleming to cease doing business with Beasley and that the threat of Union picketing violated Section 8(b)(4)(ii)(B) of the N.L.R.A., *supra*.

Following the Trial Examiner's decision, Fleming filed this suit seeking damages from Council under Sec. 303 of the L.M.R.A., *supra*.

A Motion for Summary Judgment was filed by Fleming on the issue of liability. Fleming asserted that this issue had been determined by the Trial Examiner. The motion was granted by the Trial Court. The remaining issue of damages resulting from the conduct of Council was then tried to the Trial Court. Judgment was entered on September 3, 1974, denying Fleming any damage award. This appeal is taken from that judgment.

Fleming poses these issues on appeal: (1) Whether the Trial Court erred in finding that Fleming suffered no damage as a result of the illegal conduct of Council; (2) Whether the Trial Court erred in requiring Fleming to prove the amount of its damages by clear and convincing proof; and (3)

---

1. It should be understood that the Council is composed of numerous labor unions in seven Northeastern Oklahoma counties, and that Plumber's Local 176 is one of the Council's affiliated local unions. The Council, through its business agent, represented Plumbers Local No. 176 in its dispute with Fleming.

2. Prior to the settlement above mentioned the Regional Director of the N.L.R.B. filed a petition for an injunction under Section 10(*l*) of the N.L.R.A. 29 U.S.C.A. § 160(*l*). The petition sought an injunction to restrain the Union from picketing the job site. This proceeding was dismissed pursuant to Rule 41 of Fed.Rules Civ.Proc., 28 U.S.C.A., on October 15, 1971.

3. Section 8(b)(4)(ii)(B) N.L.R.A., 29 U.S.C.A. § 158 provides in pertinent part:

> It shall be unfair labor practice for a labor organization or its agents—
>
> \* \* \* \* \* \*
>
> (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
>
> \* \* \* \* \* \*
>
> (B) forcing or requiring any person to cease . . . doing business with any other person, . . .

Whether the Trial Court erred in modifying its Partial Summary Judgment.

## I.

Fleming challenges the Trial Court's finding that it suffered no damage from the illegal conduct of Council,[4] on the ground that the Court imposed a greater quantum of proof than that required in order to maintain a § 303 suit. Fleming argues that it need only establish the existence of damages by a preponderance of the evidence, rather than by clear and convincing proof. We agree.

This Court has not heretofore considered the issue of the quantum of proof necessary to establish the existence of damages under § 303, *supra.* Indeed, there is scant authority on the issue. We are aided in our decision, however, by those cases which have considered the "clear proof" standard under § 6 of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115.[5]

The "clear proof" standard of § 6 of the Norris-LaGuardia Act, *supra*, was reviewed in *Ramsey v. Mine Workers*, 401 U.S. 302, 91 S.Ct. 658, 28 L.Ed.2d 64 (1971), wherein certain coal mine operators sued the United Mine Workers of America (UMWA) alleging violations of the Sherman Act. The operators claimed that UMWA was attempting to eliminate the marginal operators and to control production thereby, i. e. in effect by reserving production for the large operator by imposing the provisions of the National Bituminous Coal Wage Agreement on all coal mine operators. The operators contended that UMWA knew that small operators could not meet the contract's terms, and that UMWA was acting in conjunction with the major coal produc-

ers. The issue thus posed was what is the standard of proof required to show a Sherman Act violation by a labor union.

The District Court held that the "clear proof" standard found in § 6 of the Norris-LaGuardia Act was the applicable standard. The Supreme Court, however, disagreed:

. . . § 6, with its requirement that when illegal acts of any individual are charged against one of the major antagonists in a labor dispute—whether employer or union—the evidence must clearly prove that the individual's acts were authorized or ratified . . . We find no support in the legislative material for the notion that Congress intended broadly to modify the standard of proof when union and employer are sued separately or together in civil actions for damages incurred in the course of labor disputes. 401 U.S. at 310, 91 S.Ct. at 663, 28 L.Ed.2d at 70.

■ We interpret the above quoted language as clearly implying that the preponderance of the evidence standard is applicable in civil actions against labor unions with the exception of those situations triggering the application of § 6 of the Norris-LaGuardia Act which requires the "clear proof" standard. Supportive of our interpretation of *Ramsey, supra*, is *Kayser-Roth Corporation v. Textile Workers Union of America, AFL–CIO*, 479 F.2d 524 (6th Cir. 1973), cert. denied, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973). That opinion upheld the District Court's findings that a company was entitled to recover damages from a union for losses which resulted from unlawful strike activity. The Court held that the burden of proof to be applied in proving damages resulting from the unlaw-

---

4. The evidence fails to establish that any damages that might have been sustained by the plaintiff were proximately caused by the conduct of the defendant and as a matter of law the plaintiff cannot recover damages unless they are proximately caused by the defendant's illegal conduct. The proof must be clear and convincing. [R. Vol. 1 at 136]

5. Section 6 of the Norris-LaGuardia Act provides:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.
29 U.S.C.A. § 106.

ful strike activity is, the "usual preponderance of the evidence rule generally applicable to civil cases". *Kayser-Roth, supra,* at 528. Cf. *Ritchie v. United Mine Workers of America,* 410 F.2d 827 (6th Cir. 1969). We hold that the Trial Court erred in requiring Fleming to prove the existence of damages under § 303 of the N.L.R.A., *supra,* by clear and convincing evidence. The burden of proof rule applicable in this case is that of the preponderance of the evidence.

Although the Trial Court erred in requiring Fleming to prove the existence of damages by clear and convincing evidence, we must determine whether this error is harmless. Fed.Rules Civ.Proc., Rule 52(a), and 61, 28 U.S.C.A.; 28 U.S.C.A. § 2111. Our inquiry, in this regard, is whether Fleming established the existence of damages from the unlawful activity of Council by a preponderance of the evidence.

Our review of the record discloses a "hodge-pod" of evidence on the issue of damages. Fleming initially alleged that it suffered damages in the amount of $97,413.87; this sum was later reduced however to $55,171.84. The reason for reducing the amount of damages was, according to Raymond Miller, President of Fleming, that the larger figure represented damages incurred in relation to the Pontiac dealership building job as well as damages suffered at other jobs held by Fleming as a result of Council's illegal conduct.

> . . . I think we were using the snowball type of reasoning where this job delayed other jobs that were going on because of events that our equipment and personnel were shifted around . . .
> [R. Vol. III Miller Deposition at 4]

The total figure was further reduced at the time of trial by $4,295.56, representing a subcontract overrun with Comfort Engineering Company. This sum was apparently eliminated from the Fleming damage claim.

The largest item remaining of the original damage sum claimed by Fleming was that representing alleged loss of profit. The amount sought for loss of profit was $17,500. Testimony was given indicating that while the anticipated profit on the job was approximately $50,000, the actual profit amounted to $32,229. Obviously, the $17,500 figure represents the difference between the actual profit and the anticipated profit. The evidence is that the $32,229 actual profit represented a 6.62 profit percentage on the job. We deem it significant in this regard to observe that Fleming's President, Ray Miller, testified by deposition that it is very difficult to know what profit percentage Fleming would have on any given job:

> Q. What has been the normal profit percentage that you say that Fleming Building Company has had on various jobs?
> A. I wish I could answer that.
> Q. It varies, doesn't it?
> A. Yes, like a yo-yo.
> Q. Some jobs you might not make anything on an estimated profit?
> A. That's true.
> [R. Vol. III Miller Deposition at 24]

Recovery was also sought for alleged direct and indirect labor costs of $11,885.28 incurred because of Council's unlawful conduct. An examination of the job cost records reveals that these labor costs were paid out over a period from February, 1971, to April, 1972. The picketing, of course, occurred only on July 28 and July 30, 1971. Obviously, there is no merit in the $11,885.28 damage calculation.

Charges were also made for "Ray Miller's time 50 hours at $50 an hour", and for "Sam Hicks 50 hours at $25 an hour". The record, however, does not indicate that any of Miller's or Hicks' time was ever charged to the Pontiac dealership building job.

We hold that the damages alleged by Fleming are speculative and uncertain, and that they were properly denied by the Trial Court. *See Boehm v. Fox,* 473 F.2d 445 (10th Cir. 1973). Fleming failed to prove the existence of damages caused by the illegal conduct of Council by a preponderance of the evidence. That being so, we hold that the fact that the Trial Court erred

in applying the quantum of proof is harmless. Fed.Rules Civ.Proc., Rule 61, *supra*; *Sade v. Northern Natural Gas Company*, 483 F.2d 230 (10th Cir. 1973). *Land O'Lakes Creameries, Inc. v. Commodity Credit Corporation*, 308 F.2d 604 (8th Cir. 1962). The rule in this Circuit is that if the Trial Court's decision is based on an erroneous theory, we still must uphold that decision if it is correct and sustainable upon any other proper theory. *Carpenters District Council of Denver and Vicinity v. Brady Corporation*, 513 F.2d 1 (10th Cir. 1975). Such is the case here.

## II.

The only remaining issue we deem worthy of consideration is whether the Trial Court erred in modifying its partial Summary Judgment on the issue of liability. Fleming asserts that it was error to find that the order in the N.L.R.B. proceeding forms the basis for the present § 303 action.[6] The real basis for this action, according to Fleming, is the N.L.R.B.'s Findings of Fact and Conclusions of Law, which deal directly with Council's co-conspirator role in the picketing of the Pontiac dealership job site.

█ We hold that this argument is without merit. It is fundamental that there must be a final order or judgment entered before res judicata can be raised in a subsequent proceeding. *In re Johnson*, 518 F.2d 246 (10th Cir. 1975); *Finnerman v. McCormick*, 499 F.2d 212 (10th Cir. 1974), cert. denied, 419 U.S. 1049, 95 S.Ct. 624, 42 L.Ed.2d 644 (1974). It is equally obvious that the Court did consider the effect of the work stoppage caused by the picketing as reflected in its Findings of Fact.

The judgment of the Trial Court is hereby affirmed in accordance with the views expressed herein.

---

6. The record is devoid of any order modifying the partial Summary Judgment. Fleming's argument is that this judgment was modified by the Trial Court's Conclusions of Law.