Jimmy R. COLLIER, d/b/a Service and Maintenance Construction Company, Plaintiff, Appellee, Cross-Appellant,

v.

HOISTING AND PORTABLE ENGINEERS LOCAL UNION NO. 101, Defendant,

Construction and General Laborers Local Union No. 1290, Defendant, Appellant, Cross-Appellee.

Nos. 83–1004, 83–1142.

United States Court of Appeals, Tenth Circuit.

May 7, 1985.

Thomas H. Marshall of Black and Uhlig, P.A. (Patrick L. Dunn, with him on the brief), Kansas City, Kan., for defendant, appellant, cross-appellee.

Dennis E. Mitchell, of Laurence M. Jarvis, Chartered, Kansas City, Kan., for plaintiff, appellee, cross-appellant.

Before LOGAN and SETH, Circuit Judges, and KANE, District Judge *.

SETH, Circuit Judge.

This is an action for damages brought by a contractor against two unions, the Construction and General Laborers Local Union No. 1290 and the Hoisting and Portable Engineers Local Union No. 101. Local 101 was granted a motion for a directed verdict after the case had gone to the jury. The jury found that Local 1290 had picketed plaintiff unlawfully and awarded damages. The Local has taken this appeal.

The basic issue on appeal is whether there was sufficient evidence to submit the issue of illegal picketing to the jury and whether there was sufficient evidence of an illegal secondary purpose for the picketing to support the jury verdict.

The plaintiff as the primary employer had a contract to do work on the parking area or grounds of the plant of Owens-Corning Company, the secondary employer. The picket or pickets of the union were placed at or near the plant entrance of Owens-Corning. They were there for a part of each day for three days. The plaintiff could not work for most of this period because of the rain. On the third day the picketing caused a large number of Owens-Corning employees to congregate at that entrance. The Company thereupon terminated plaintiff's contract and asked him to remove his equipment. Plaintiff alleges that he has received no more contracts from the Company as a consequence of the picketing.

The common situs picketing gave rise to the secondary purpose issue and the application of the *Moore Dry Dock* case. (Sailor's Union of the Pacific, 92 N.L.R.B. 547.) The proscribed picketing alleged by plaintiff and found to have existed by the jury was that described in 29 U.S.C. § 158(b)(4) or § 8(b)(4). Section 303(a) of the Labor Management Relations Act, 29 U.S.C. § 187(a), provides:

"It shall be unlawful ... for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title."

Section 158(b)(4) provides in part:

"It shall be an unfair labor practice for a labor organization or its agents—

....

"to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce ... to threaten, coerce, or restrain any person engaged in commerce ..., where ... an object thereof is ... forcing or requiring any employer ... to join any labor ... organization ... [or] forcing or requiring any person ... to cease doing business with any other person...."

The defendant, as mentioned, asserts that the sole purpose of the picketing was to protect area wage and benefit standards

* Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

and the picketing was properly done. The plaintiff argues that there was sufficient evidence to demonstrate that there was a prohibited secondary purpose to support the verdict.

 We must conclude that there was adequate evidence of an illegal secondary purpose, and the picketing was improperly conducted. There was also evidence of threats made against plaintiff and against Owens-Corning contrary to § 8(b)(4). If the picketing was in part for any of the proscribed purposes it is wholly illegal. *Pickens-Bond Construction Co. v. United Brotherhood of Carpenters*, 586 F.2d 1234 (8th Cir.).

 The secondary purpose issue is a fact question for the jury if there is sufficient evidence. The jury in such circumstances is to consider what was done, the context and general circumstances, together with all permissible inferences.

The issue here was submitted to the jury with proper instructions. The defendant does not challenge the instructions except as to damages. The trial judge gave Instruction 15 which in part states:

"In rendering your verdict in this case, you are instructed that as to a particular defendant, you must answer both the following questions 'Yes' in order to find that particular defendant liable:

(1) Did the particular defendant knowingly induce or encourage employees(s) of Owens-Corning to cease work, or threaten and coerce representatives of Owens-Corning?

and

(2) Were these acts done by the particular defendant with an object or purpose or intent to force Owens-Corning to cease doing business with plaintiff, or to force plaintiff to join the defendant union or unions?

"If your finding on either of these issues is in the negative as to a particular defendant, you should return a verdict in favor of that particular defendant. If your finding on both of these questions is 'Yes' as to a particular defendant, you should return a verdict in favor of the plaintiff against that defendant union...."

The jury is to consider the nature of defendant's acts, what was done, the purpose of the acts, together with all reasonable inferences, all in relation to all the surrounding circumstances. This is done also by a consideration of the several elements in relation to each other. *Local 761, International Union of Electrical, Radio & Machine Workers v. NLRB*, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592; *Texas Distributors v. Local Union No. 100*, 598 F.2d 393 (5th Cir.); *Pickens-Bond Construction Co. v. United Brotherhood of Carpenters*, 586 F.2d 1234 (8th Cir.).

The record contains evidence from which the jury could infer that other unions were advised in advance of the picketing by Local 1290. Thus there was a meeting of representatives of Local 1290, Local 101, a carpenters' union, and several other unions with officials of Owens-Corning at the Company plant before the picketing. The jury could infer from the number of unions involved there had been previous notice that there would be picketing. It was apparent that Local 1290 had advised Local 101 because the representatives of both came to the work site to talk to plaintiff before the picketing began. This previous notice has been held to be evidence of a secondary purpose.

In common situs picketing it is necessary to avoid illegality that the picketing be limited strictly to the situs of the primary employer's work and also to the time that employer is engaged in regular work. The record shows that there was picketing for three days at the site, but the primary employer did not work but the afternoon of the second day. When he arrived on the second day the picketing was going on. The picket on each of the days was picketing before the primary employer arrived to look at the site and apparently stayed after the employer left. The picketing was conducted at times when the secondary employer was working rather than when the primary employer was working. There were weather problems but the picketing

did not conform to *Moore Dry Dock*. This element is one of the factors to be considered by the jury.

There was evidence before the jury that the defendant engaged in selective picketing. It did not picket other nearby job sites of plaintiff nor his office-yard. This again is a factor which the jury could consider.

It is not necessary to detail the evidence as to the threats to plaintiff—that if he did not unionize the job would be bannered. There was evidence that the officials of Owens-Corning responded to threats that their plant would be shut down if plaintiff's work was not stopped. Mr. Browne of Owens-Corning so testified. It must be concluded that there was sufficient evidence from which the jury could conclude that the picketing was illegal.

The incident had very serious implications for Owens-Corning and it is reasonable to expect that the relationship between the Company and plaintiff would change. Before, the Company would call plaintiff to bid or do the job if work was needed. If the testimony of plaintiff as to what Mr. Bradbury of Owens-Corning told him shortly after the incident is accepted—that is that there would be no more jobs for plaintiff until plaintiff had his problems with the union straightened out—then it would appear that the Company expected a response from plaintiff. The record shows that plaintiff made no inquiries as to available jobs after the conversations shortly after the incident and made no other attempts to do work for the Company. There was a lapse of time of about 52 months from the incident until the suit and plaintiff claimed $1,200 per month for this period. This was his average monthly profit on Owens-Corning jobs before the incident. The jury awarded approximately such an amount.

We must hold that the proof of damages after the completion of the job in progress was "speculative and uncertain." *Fleming Building Co. v. Northeastern Oklahoma Building*, 532 F.2d 162 (10th Cir.). The only damages established were the loss on the job in progress.

The unlawful acts of Local 1290 had an adverse effect on the relationship plaintiff had established with Owens-Corning. But the proof of damages was speculative at best in the absence of any effort on the part of plaintiff to obtain any jobs.

We have examined the contention of the defendant as to the admission of hearsay testimony by Mr. Bradbury and find no error, nor as to the impact of the directed verdict as to Local 101.

The case is remanded to the trial court for further proceedings as to the issue of damages.

IT IS SO ORDERED.