IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,599

MARK BULLOCK,
*Appellee*,

v.

BNSF RAILWAY COMPANY,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-451 prohibits the admission of subsequent remedial measures to prove negligence or culpable conduct.

2.

Post-event employee discipline constitutes a subsequent remedial measure, and it is barred by K.S.A. 60-451 when used to prove negligence or culpable conduct.

3.

Post-event investigative reports or tests are not subsequent remedial measures that fall within K.S.A. 60-451's purview.

4.

When otherwise admissible evidence includes information that is barred by K.S.A. 60-451, the trial court should exclude whatever portions of the evidence are subsequent remedial measures and any evidence that would trespass inferentially into K.S.A. 60-451.

1

**5.**

While K.S.A. 60-451 bars evidence of subsequent remedial measures to establish negligence or culpable conduct, such evidence is admissible for other relevant purposes.

**6.**

K.S.A. 60-451 bars subsequent remedial measures evidence to establish causation because it is a necessary element of negligence, which itself is prohibited under the statute from being proven by such evidence.

**7.**

When no fault other than that of the plaintiff and defendant is to be compared, subsequent remedial measures evidence is not admissible to rebut the defense of plaintiff's contributory negligence because evidence that tends to exculpate the plaintiff of necessity places fault upon the defendant.

**8.**

Remarks of counsel in a civil case result in reversible error when, because of them, the parties have not had a fair trial.

**9.**

The reasonable probability test announced in *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), applies to claims that improper argument prevented a fair civil trial. So reversal of a jury verdict is appropriate when there is a reasonable probability that the error will or did affect the trial's outcome in light of the entire record.

**10.**

Juries are tasked with deciding cases based on the evidence presented and the law provided by the court's instructions, not with protecting their communities through their

verdicts. So comments that appeal to community interests, like those made by counsel in this case, are improper.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 7, 2015. Appeal from Wyandotte District Court; DAVID W. BOAL, judge. Opinion filed August 4, 2017. Judgment of the Court of Appeals reversing and remanding to the district court is affirmed. Judgment of the district court is reversed, and the case is remanded for further proceedings.

*Craig M. Leff*, of Yeretsky & Maher, LLC, of Overland Park, argued the cause, and *Gregory F. Maher* and *Spencer L. Throssell*, of the same office, were with him on the briefs for appellant.

*Daniel J. Cohen*, of Law Offices of Daniel J. Cohen, of St. Louis, Missouri, argued the cause, and *Davy C. Walker,* of Law Offices of Davy C. Walker, of Kansas City, was with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.:  To recover for his injuries sustained after slipping on diesel fuel spilled by a coworker, Mark Bullock sued his employer under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (2012). Over the objection of his employer BNSF Railway Company (BNSF), Bullock introduced evidence at trial that the coworker had been disciplined for his conduct in contrast to BNSF's concession that it had not disciplined Bullock.

The jury found BNSF to be 100 percent at fault based on the coworker's actions and awarded Bullock $1,720,000 in damages. But the Court of Appeals panel held the evidence of the coworker's discipline was admitted in violation of K.S.A. 60-451. *Bullock v. BNSF Railway. Co.*, No. 111,599, 2015 WL 4879054, at *8 (Kan. App. 2015) (unpublished opinion). The panel also held the admission was harmful enough to require

3

reversal of the verdict and remand for a new trial. We granted Bullock's petition for review under K.S.A. 60-2101(b) (review of Court of Appeals decision).

We agree with the panel. Evidence of employee discipline qualifies as a subsequent remedial measure, and K.S.A. 60-451 prohibits its admission when offered to prove "negligence or culpable conduct in connection with the event." Because the disciplinary evidence was admitted for those improper purposes here, and because the error was not harmless, we reverse and remand for a new trial.

We also agree with the panel that some statements Bullock's counsel made to the jury during his closing argument were improper. But because we already are reversing and remanding on the disciplinary evidentiary issue, we need not determine whether this additional error was harmless.

FACTS AND PROCEDURAL HISTORY

Bullock worked as a cab carpenter for BNSF. While working on coupled locomotives at a maintenance facility he walked through what he recognized to be diesel fuel. After calling to report the spill, Bullock continued his duties. As he stepped from the running board of one locomotive to another, his foot slipped, and he fell in the gap and was injured. It was later discovered that the fuel had been spilled by Bullock's coworker, Chris Wise, while changing fuel filters. BNSF Mechanical Foreman, Levi McNeely, conducted an injury investigation, and the ensuing "McNeely report" listed two causes of Bullock's injuries: (1) Wise left fuel on walkways creating a slip, trip, and fall hazard; and (2) Bullock's "inability to perform a proper risk assessment after walking through the fuel."

Bullock sued BNSF for negligence under FELA, and BNSF's defenses included a claim that he was contributorily negligent.

4

At trial, evidence was introduced showing Bullock was not disciplined for his conduct. Evidence was also introduced regarding the injury investigation and showing that Wise was later subjected to a disciplinary process—"alternative handling" that would not appear in his personnel record. Relevant to this appeal, BNSF objected to the evidence that Wise was subjected to alternative handling, arguing the discipline was a subsequent remedial measure barred by K.S.A. 60-451. This objection encompassed testimony from Wise and his supervisor, General Foreman Mark Stockman, concerning the alternative handling as well as several documents. Some of these documents included:

- A letter BNSF sent to Wise after he "acknowledged accountability" and accepted disposition by alternative handling. The letter outlined the disciplinary details, including a requirement that he "accept full responsibility" because his actions were in "clear violation" of rules and his "failure to clean up the residual fuel contributed to the injury of a fellow worker." It further required that he work with Stockman to create an alternative handling plan and encouraged Wise to make this a "learning experience that will help eliminate at risk behavior and prevent future incidents."

- An email drafted by Stockman containing a script Wise was required to read to his fellow employees as part of the alternative handling. Through that script, Wise admitted, "[M]y negligence contributed to an injury to another employee." Among other things, the script also expressed: "In the future, it is my hope that each employee remembers this statement, and by my speaking to you today, will help draw attention to the need to protect yourselves and your coworkers against slip, trip and fall hazards."

The district court overruled BNSF's objection, holding that evidence of post-accident employee discipline was not a subsequent remedial measure prohibited by the statute.

The jury found that BNSF negligently caused Bullock's injuries and that he was not contributorily negligent. It awarded $1,720,000 in damages—composed of $136,500 for economic loss to date; $1,208,500 for future economic loss; $230,000 for noneconomic loss to date; $145,000 for future noneconomic loss; and $0 for future medical expenses.

BNSF filed a motion for new trial, again arguing—in part—that Wise's discipline was a subsequent remedial measure. BNSF claimed this evidence was overly prejudicial because Bullock contended this discipline was "tantamount to an admission of liability" in contrast to BNSF's decision not to discipline Bullock. The district court denied the motion, holding, among other things, that Wise's disciplinary proceedings were relevant to BNSF's defense that Bullock was contributorily negligent.

The Court of Appeals panel held the evidence of Wise's discipline was a subsequent remedial measure barred by K.S.A. 60-451 when admitted to prove negligence or culpable conduct. The panel also held that this evidence was not admissible to show lack of Bullock's contributory negligence, to show causation, or for impeachment purposes. Because the panel held a reasonable probability existed that the jury would have apportioned the parties' fault differently absent admission of such evidence, it ruled the error was not harmless. So it reversed and remanded for a new trial. *Bullock*, 2015 WL 4879054, at *8-13.

In its analysis, the panel distinguished between (1) employee discipline and (2) the post-event investigation which is not considered a subsequent remedial measure barred from admission. To the extent the discipline overlapped with the investigative

6

conclusions, the panel suggested that redactions may be required to ensure that the impermissible discipline evidence was not presented to the jury through the investigation evidence. But the panel declined to apply its holding to the evidence admitted at trial, leaving it to the parties and district court to apply the rules on remand.

Even though the panel's evidentiary ruling alone was enough for reversal and remand to the district court, the panel also addressed BNSF's claim that Bullock's counsel improperly appealed to the conscience of the community during closing argument. The panel agreed the comments were improper but did not determine whether that error independently required reversal.

Bullock petitioned for this court's review of some of the issues presented to the panel. Those petitioned issues and our analysis appear below. The remaining issues obviously are not among those granted for review by this court and, therefore, are not currently before us, *e.g.*, use of disciplinary evidence as impeachment. See Supreme Court Rule 8.03(h)(1) (2017 Kan. S. Ct. R. 56) ("[T]he issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals.").

ANALYSIS

*Issue 1*: *Post-accident employee discipline is a subsequent remedial measure under K.S.A. 60-451.*

Bullock argues evidence of post-accident employee discipline is not a subsequent remedial measure, so it does not fall within K.S.A. 60-451's scope. He also argues even if the statute does apply, the disciplinary evidence nevertheless was admitted for permissible purposes—to prove causation and to rebut BNSF's defense of his contributory negligence. He further argues some of the disciplinary evidence is

7

admissible to provide context for other evidence, *e.g.*, the accident investigation. Taking each argument in turn, we disagree with them all.

*Standard of review*

Bullock's cause of action arises under FELA. Under this federal law, evidentiary and procedural questions are determined by the law of the forum, so Kansas law governs them here. *St. Louis Southwestern R. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 84 L. Ed. 2d 303 (1985) ("As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal.").

Our review of evidentiary decisions is "guided by the character of the question considered." *City of Wichita v. Denton*, 296 Kan. 244, 257, 294 P.3d 207 (2013). Because the issue here centers on the district court's interpretation of K.S.A. 60-451, our review of its admissibility decision is de novo. See *Schlaikjer v. Kaplan*, 296 Kan. 456, 467, 293 P.3d 155 (2013) (district court's admissibility determination based on statutory interpretation).

*Post-event employee discipline is a subsequent remedial measure.*

K.S.A. 60-451 prohibits the admission of subsequent remedial measures to prove negligence or culpable conduct:

> "When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

8

Two primary reasons have been given for this exclusion. First, "[s]ubsequent remedial measures do not constitute admissions of culpability, and evidence of such conduct is inherently unreliable." *DiPietro v. Cessna Aircraft Co.*, 28 Kan. App. 2d 372, 378, 16 P. 3d 986 (2000). Second, public policy should "encourage potential defendants to remedy hazardous conditions without fear that their actions will be used against them." 28 Kan. App. 2d at 378 (citing *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 [4th Cir. 1994]).

Previous Kansas appellate courts have not addressed the specific question of whether post-accident employee discipline constitutes a subsequent remedial measure under K.S.A. 60-451. Perhaps for this reason, the panel focused on federal court decisions interpreting Federal Rule of Evidence 407 which concerns the same subject. *Bullock*, 2015 WL 4879054, at *5-6 (discussing, *e.g.*, *Specht v. Jensen*, 863 F.2d 700, 701-02 [10th Cir. 1988]). Bullock takes exception to this federal caselaw reliance by the panel.

We start our analysis with a focus on K.S.A. 60-451. Adopted in 1964, this statute is identical to Rule 51 of the uniform rules committee of the National Conference of Commissioners on Uniform State Law. The committee was chaired by Kansan Spencer A. Gard, and its only comment to the rule was, "This states the well[-]settled common law rule." Uniform Rules of Evidence Rule 50, comment (1953) (later renumbered as Rule 51).

The well-settled common law rule appeared to include prohibiting admission of post-accident employee discipline:

> "The [subsequent remedial measures] rule finds its most common application in respect to evidence of subsequent repairs . . . , but it has been applied as well to changes in operating rules *and to the discharge of an employee charged with causing an injury*.

9

As drawn, Rule 51 appears broad enough to cover any situation which, *by existing law*, is within the sweep of the exclusionary principle." (Emphases added.) Falknor, *Extrinsic Policies Affecting Admissibility*, 10 Rutgers L. Rev. 574, 591 (1956) (citing cases at n.74).

We observe, for example, in one of the law review article's cited cases, the Washington Supreme Court stated in 1893 that, "We are also of the opinion that the court should not have permitted the respondent to show that the car driver was discharged by appellant soon after the accident occurred." *Christensen v. Union Trunk Line*, 6 Wash. 75, 83, 32 P. 1018 (1893); see also, *e.g.*, *Hewitt v. Taunton St. Ry. Co.*, 167 Mass. 483, 486, 46 N.E. 106 (1897) (employer's taking precaution of a virtual discharge of employee driver after accident is not admissible as employer's implied admission for purpose of showing negligence; "[t]o hold otherwise would tend to discourage the adoption of additional safeguards, by improving the quality and raising the standard of the service"); accord *Rynar v. Lincoln Transit Co.*, 30 A.2d 406, 410 (N.J. 1943) ("Evidence that a driver has been discharged soon after an accident is not competent as an implied admission that the driver had been careless."); *cf. Turner v. Hearst*, 115 Cal. 394, 401, 47 P. 129 (1896) (error to allow plaintiff to prove newspaper's discharge of reporter in libel case; analogous to proof of precaution taken post-accident).

Based upon the well-settled common law rule incorporated in Rule 51—and thus incorporated in Kansas' adoption of Rule 51, *i.e.*, K.S.A. 60-451—we conclude post-accident employee discipline constitutes a subsequent remedial measure barred by the statute when used to prove negligence or culpable conduct in connection with Bullock's event. It therefore must be excluded from evidence.

In addition to this statutory analysis and resultant conclusion, we agree with the panel's analysis that considered how federal courts have addressed the question under Federal Rule of Evidence 407. That rule states:

10

"*When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:*

- *negligence;*
- *culpable conduct*;
- a defect in a product or its design; or
- a need for a warning or instruction.

"But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." (Emphasis added.)

This rule and K.S.A. 60-451 have been viewed as embodying the same requirements, although Rule 407's language admittedly is not identical. As one noted commentator on K.S.A. 60-451 has concluded:  "Federal evidence rule compared. Federal Rule 407 is the same, but it adds the obviously implied provision that such evidence is not excluded when it tends to prove facts other than negligence or culpable conduct." 4 Gard, Casad, & Mulligan, Kansas C. Civ. Proc. 5th Annot. § 60-451 (2012); accord, Advisory Committee Notes to Fed. R. Evid. 407 ("For comparable rules, see Uniform Rule 51; . . . Kansas Code of Civil Procedure § 60-451.").

The fundamental purposes underlying the Kansas statute and the federal rule are essentially the same. As Gard, Casad, and Mulligan provide in the commentary to K.S.A. 60-451:

"Even though the subsequent conduct of a party may seem to support an inference of consciousness of wrong, or amount to an admission of negligence, public policy stands in the way of the subsequent measures taken to prevent further injuries from being used as evidence for such purpose. The policy considerations are strong and very

11

generally recognized." 4 Gard, Casad, & Mulligan, Kansas C. Civ. Proc. 5th Annot. § 60-451 (2012).

In the same vein, the Advisory Committee Notes to Rule 407 provide: "The rule incorporates conventional doctrine which excludes evidence of subsequent remedial measures as proof of an admission of fault." And the advisory committee cites with approval the same law review article that supports Rule 51. Specifically, the subsequent remedial repair principle has been applied to exclude evidence of "changes in company rules, *and discharge of employees*, and the language of the present rule is broad enough to encompass . . . them. See Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L. Rev. 574, 590 (1956)." (Emphasis added.) Fed. R. Evid. 407, advisory committee notes.

Similarly, the federal rule favors "encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407, advisory committee notes. And per Rule 51, and thus K.S.A. 60-451, "The tenable basis for exclusion is, therefore, not lack of probative worth, but the impact of an extrinsic social policy, that of encouraging, or not discouraging, the taking of immediate steps to prevent further harm by the offending instrumentality." 10 Rutgers L. Rev. at 590-91.

While we are not bound by federal interpretations of the federal rule, we may consider federal authority when it is based on a similar rule of evidence. See *State v. Robinson*, 303 Kan. 11, 222, 363 P.3d 875 (2015) (considering federal and similar state counterparts to analyze what constitutes "the writing itself" under the best evidence rule when the evidence is stored electronically). Given these similarities between the two in language and purpose, federal court decisions evaluating whether post-accident employee discipline is a subsequent remedial measure is quite informative to our view of K.S.A. 60-451.

12

As the *Bullock* panel observed, the Tenth Circuit held evidence of post-accident employee discipline was properly excluded under Rule 407 in *Specht*, 863 F.2d at 701. *Specht* was a civil rights action against police for an allegedly illegal search and seizure of plaintiffs' home and office. The city investigated the events underlying the lawsuit and summarized its findings in a press release that concluded "the officers involved exercised poor judgment in failing to read the writ of assistance thoroughly, and that appropriate disciplinary action would be taken." 863 F.2d at 701. The Tenth Circuit found no abuse of discretion in excluding the press release because the release "sets out remedial measures taken by the City to prevent the recurrence of the poor judgment the investigation revealed, and is therefore within the ambit of Rule 407." 863 F.2d at 701; see also *Nolan v. Memphis City Schools*, 589 F.3d 257, 273-74 (6th Cir. 2009) (citing *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 586-87 [10th Cir. 1987]); *Hull*, 812 F.2d 587; *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (disciplinary proceeding constituted inadmissible remedial measures under Rule 407); *Rocky Mountain Helicopters. v. Bell Helicopters*, 805 F.2d 907, 918-19 (10th Cir. 1986); *Hochen v. Bobst Group, Inc.*, 193 F.R.D. 22, 24 (D. Mass. 2000) (if defendant had discharged the bus driver after the accident, or required him to undergo additional safety training, evidence of these steps would fall squarely within the rule excluding evidence of subsequent remedial measures); 23 Wright & Graham, Federal Practice and Procedure: Evidence § 5284) (1980).

More recently, as the panel observed, the United States District Court for the District of Kansas excluded the post-accident suspension and termination of an employee as subsequent remedial measures under Rule 407. *Caravan Ingredients, Inc. v. Azo, Inc.*, No. 13-2592-JTM, 2015 WL 1279531, at *5-6, 8 (D. Kan. 2015) (citing *Hull*, 812 F.2d at 586-87). And the United States District Court for the District of Columbia excluded evidence of disciplinary proceedings against a bus driver involved in an accident as

13

subsequent remedial measures under Rule 407. *Mahnke v. Washington Metropolitan Area Transit*, 821 F. Supp. 2d 125, 150-52 (D.D.C. 2011).

To defeat this authority, Bullock relies primarily on two cases. He first cites a federal case, *Bonds v. Dautovic*, 725 F. Supp. 2d 841 (S.D. Iowa 2010), where the plaintiff arrestees asserted claims of police assault and violations of their constitutional rights under 42 U.S.C. § 1983. They sought a ruling allowing them to introduce portions of the police chief's deposition, to which the defendant city objected as evidence of subsequent remedial measures under Rule 407.

But the *Bonds* court was not asked to decide whether employee discipline constituted a subsequent remedial measure. Its plaintiffs specified they were not seeking to introduce the evidence that the officers later resigned in the face of a choice to resign or be fired. Rather, the issue was the admissibility of the post-accident investigation and the chief's later statements about the officers' inappropriate use of ASP batons. As the *Bullock* panel held—and we discuss in more detail below—there is "a distinction between the actual disciplining of employees for their conduct, which could constitute a remedial measure, and the investigation that precedes a disciplinary process." *Bullock v. BNSF Ry. Co.*, No. 111,599, 2015 WL 4879054, at *7 (Kan. App. 2015) (unpublished opinion).

Bullock also cites an Oregon Court of Appeals case, *Ensign v. Marion County*, 140 Or. App. 114, 914 P.2d 5 (1996). There, the county argued the trial court erred in allowing the deputy's post-accident reprimand into evidence because it was a subsequent remedial measure. But the appellate court decided the issue by simply assuming error and then holding it was harmless. 140 Or. App. at 120 ("Assuming without deciding that the reprimand was a subsequent remedial measure, in this case failing to exclude evidence about the reprimand would not affect a substantial right of the county.").

14

So like the panel, we conclude from the federal caselaw addressing the similar Rule 407 that evidence of post-accident employee discipline is a subsequent remedial measure prohibited by K.S.A. 60-451 when offered to show negligence or culpable conduct.

And like the panel, we further observe that employers may choose to not administer discipline if they know such evidence will be admitted to show their culpability. Such a reaction would be contrary to K.S.A. 60-451's purpose of encouraging potential defendants to take remedial action without fear that their actions will be used against them. 2015 WL 4879054, at *6; see *Columbia Railroad Co. v. Hawthorne*, 144 U.S. 202, 208, 12 S. Ct. 591, 36 L. Ed. 405 (1892) (allowing subsequent changes as evidence of prior negligence "'virtually holds out an inducement for continued negligence'"); see also *DiPietro*, 28 Kan. App. 2d at 378.

The employer's refusal to administer discipline under such circumstances can cause the employer another set of problems. Deciding not to discipline can mean the problem repeats, subjecting the employer to the possibility of punitive damages. Under K.S.A. 60-3701(d)(1), punitive damages are allowed against an employer when an employee's conduct is authorized or ratified by persons expressly empowered to do so on behalf of the employer.

This court has noted with approval that "jurisdictions with statutes similar to 60-3701(d)(1) have held that knowledge of an employee's wrongful conduct, *coupled with failure to discipline the employee*, amounts to implied ratification or authorization." (Emphasis added.) *Smith v. Printup*, 254 Kan. 315, 340, 866 P.2d 985 (1993) (citing cases). Among other things, the *Smith* court concluded:

15

"Ratification under the provisions of 60-3701(d)(1) may be either express or implied and may be accomplished before, during, or after the employee's questioned conduct. It may be based on an express ratification or *based on a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct.*" (Emphasis added.) 254 Kan. at 342.

We acknowledge that the federal courts have unanimously held that punitive damages are not recoverable in FELA cases. *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 388 (5th Cir. 2014) ("No case under FELA has allowed punitive damages, whether for personal injury or death."). But failing to discipline Wise could subject BNSF to the added risk of punitive damages in future cases, *e.g.*, should a visitor slip in spilled liquids and fall—while actually disciplining him could have subjected BNSF to a greater risk of liability for compensatory damages in the instant case. These are the makings of a dilemma.

*Evidence of an employer's post-event investigation is admissible.*

Bullock next argues that evidence of an employer's post-event investigation is admissible because it is not a subsequent remedial measure. And, according to Bullock, because the conclusions from BNSF's investigation are sometimes mingled with the employee discipline evidence, the latter is admissible to provide necessary context to some of the investigation evidence.

Considerable evidence regarding BNSF's post-event investigation was admitted at trial. This included testimony by BNSF employee, Mechanical Foreman Levi McNeely, who reported to the scene immediately after learning of Bullock's injuries and attempted to recreate what happened. Evidence also included the McNeely report containing his investigative conclusions for BNSF. McNeely's testimony and report identified two "root causes" of Bullock's injuries. The first was Wise's failure to clean up the spilled fuel, and

16

the second was Bullock's failure to perform a proper risk assessment after walking through the fuel**.**

The panel held that post-event investigative tests and reports were not excluded by K.S.A. 60-451. But it declined to determine which specific parts of all the previously admitted evidence would be permitted on retrial, stating:

> "Both parties acknowledge some distinction between remedial measures and investigatory reports, but neither party attempts to apply that distinction to all of the challenged evidence here. Neither shall we. Instead, we set forth our ruling in general terms." *Bullock*, 2015 WL 4879054, at *7.

The panel then directed that on remand the parties—obviously with the district court's guidance—"should redact any evidence of discipline or other remedial measures from the evidence of the investigation." 2015 WL 4879054, at *8.

We generally agree with the panel—and both parties—that post-event investigative tests and reports are not subsequent remedial measures and are admissible as evidence. See 2 Weinstein & Berger, Weinstein's Federal Evidence § 407.06[1] & nn.1-2 (2d ed. 2017) (collecting cases regarding Rule 407). The 10th Circuit Court of Appeals explains why:

> "It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as 'measures' which, if conducted previously, would reduce the likelihood of the occurrence. Yet *it is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test.* In this case, the remedial measure was not the

17

[study of the helicopter part] but rather the subsequent redesign of the [part]." (Emphasis added.) *Rocky Mountain*, 805 F.2d at 918.

But as the panel suggested, it is not unusual for some evidence to include information that is permissible, such as investigative conclusions, and information that is impermissible, such as employee discipline. See, *e.g.*, *Specht*, 863 F.2d at 701-02 (city's press release properly excluded when it concluded officers erred and addressed subsequent remedial measures taken); *Rocky Mountain*, 805 F.2d at 918 (investigative report included some subsequent remedial measures). In such a situation, a trial court should exclude portions of the evidence that are subsequent remedial measures to avoid admission of any evidence that would "trespass *inferentially* into the Rule 407 prohibited terrain of proof of culpable conduct." (Emphasis added.) *Hull*, 812 F.2d at 587.

After the panel declined to determine what parts of this mixture of evidence on remand would be excluded as disciplinary under K.S.A. 60-451, leaving redaction of discipline to the parties, Bullock petitioned this court for review, arguing that redacting "makes no practical sense." Of all the evidence to be reviewed upon remand, his petition focuses exclusively on the Stockman script read aloud by Wise. While the parties do not identify every piece of evidence about which they argue—documentary and testimonial—for this script they do make sufficient argument enabling us to make a specific determination of admissibility on remand.

Bullock's Exhibit 5 entered into evidence was a copy of an email that Stockman drafted and sent to himself. As enumerated by Bullock, it states in full:

"Stockman, Mark A

"From:          Stockman, Mark A
"Sent:          Tuesday, December 09, 2008 3:01 AM

18

"To:              Stockman, Mark A

"Subject:       Chris Wise Alt Handling statement.

"[1] Good morning,

"[2] My name is Chris Wise, I am a 3rd shift machinist, and recently I was involved in a situation where my negligence contributed to an injury to another employee. [3] I was working an M92 day inspection at the DSF, when I failed to clean up a diesel fuel spill that I created by changing the primary fuel filter on a GE locomotive. [4] It was my responsibility to clean up the fuel spill. [5] I failed to recognize the hazards associated with spilt fuel on the running board. [6] I also failed to recognize the potential hazard to my fellow coworkers and myself.

"[7] In the future, it is my hope that each employee remembers this statement, and by my speaking to you today, will help draw attention to the need to protect yourselves and your coworkers against slip, trip and fall hazards. [8] Please take the time to protect yourselves and others against potential injuries.

"Thank you,
"Chris Wise"

In Bullock's petition for review, he cites the second sentence in which Wise admitted his negligence contributed to Bullock's injury. He argues it reflects BNSF's post-event investigative conclusions, so (1) the script is admissible along with (2) the context of the script—Wise's alternative handling, *i.e.*, his discipline. By contrast, BNSF points out that the script "was the culmination of the disciplinary process" and BNSF's goal was to encourage work safety, which BNSF notes is "plainly a remedial goal."

Additionally, Wise and Stockman specifically testified about the circumstances surrounding the script and Wise's presentation to his coworkers. That testimony included

19

a reading to the jury of Wise's deposition transcript where he had read the email into the record.

We agree with Bullock that the substantive content of the email, *i.e.*, the words Wise spoke to his coworkers, is admissible evidence as post-event investigative conclusions. In it, Wise admits that "my negligence contributed to an injury to another employee . . . when I failed to clean up a diesel fuel spill that I created by changing the primary fuel filter on a GE locomotive." It generally echoes a "root cause" conclusion in McNeely's report—admitted into evidence without BNSF objection—that "[a]nother employee [Wise] had performed M92 inspection and while changing fuel filters out left fuel on walkways creating a slip, trip, and fall hazard."

What is not admissible, however, is the email format language preceding this substantive content. A jury knowing that Wise's supervisor, General Foreman Stockman, created the first person narrative of Wise and sent the email to himself could easily conclude that Stockman wrote it exclusively for Wise. After all, the subject line expressly identifies it as the "Chris Wise Alt Handling statement." And with the jury also knowing from the format language that this statement was created 6 months after McNeely's June "Injury Investigation," it could easily conclude that Wise's verbatim reading aloud of this prepared script was a condition of his discipline. Accordingly, this portion of the email would "trespass inferentially" into K.S.A. 60-451's "prohibited terrain of proof of culpable conduct." *Hull*, 812 F.2d at 587.

We also reject Bullock's argument that some of the disciplinary evidence is admissible to provide context for the script. In his petition for review he argues, "It would be unfair to Bullock to leave the jury with the impression that Wise himself wrote the script, because that would allow BNSF to distance itself from and/or deny its own conclusions." Bullock's concerns about unfairness are eliminated by other evidence, *e.g.*,

20

supervisor McNeely's report that expressly concludes a BNSF employee—Wise— "creat[ed] a slip, trip, and fall hazard" by leaving fuel on walkways.

As for any concerns that the last two sentences of the script should be redacted because they are part of Wise's disciplinary process, a jury will not readily draw that conclusion. When combining them with the previous sentences containing Wise's various forms of fault admissions, a jury instead could well conclude the entire statement is simply Wise's apology and contains his hope that his coworkers will learn from his mistakes before anyone else gets injured. For we further note that in Bullock's Exhibit 1—Wise's handwritten statement given as part of the investigation 6 months earlier to which BNSF did not object—he stated in part, "I am incredibly sorry for what happened to Mr. Bullock and I wish something would have happened differently and this could have been avoided."

*The evidence is not admissible for other purposes advanced by Bullock in this case.*

Although evidence of subsequent remedial measures to establish negligence or culpable conduct is barred by K.S.A. 60-451, "it is admissible when offered for other relevant purposes." *Siruta v. Hesston Corp.*, 232 Kan. 654, 668, 659 P.2d 799 (1983). We have previously recognized that evidence of subsequent remedial measures can be admitted to show feasibility of design, the condition at the time of the event, who bore responsibility for repairs, or who was in control. 232 Kan. at 668 (feasibility of design changes); *Huxol v. Nickell*, 205 Kan. 718, 723, 473 P.2d 90 (1970) (condition at time of accident, responsibility for repairs, or control).

Bullock asks us to hold that subsequent remedial measures also are admissible to prove causation and to rebut a contributory negligence defense. We disagree for the reasons stated below.

21

*Causation*

A plaintiff seeking recovery under FELA must "prove the *traditional common-law negligence* elements of duty, breach of a duty, foreseeability of injury, *and causation* with its attendant relaxed burden." (Emphasis added.) *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 491, 369 P.3d 966 (2016); see also *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691-92, 131 S. Ct. 2630, 180 L. Ed. 2d 637 (2011) (comparing tort litigation causation with relaxed causation standard under FELA). In Kansas, plaintiffs alleging negligence bear the burden of proving the same basic four elements:  (1) existence of a duty, (2) breach of that duty, (3) injury, and (4) "a *causal connection* between the duty breached and the injury suffered." (Emphasis added.) *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 220-21, 262 P.3d 336 (2011).

Recognizing that K.S.A. 60-451 prohibits admission of this evidence when offered to "prove negligence or culpable conduct," Bullock agrees the statute is meant to exclude evidence admitted to show the negligence elements of duty and a breach of that duty but argues it is admissible to establish the element of causation. The panel did not reach the merits of the issue because it held that causation was not in dispute. The panel held:

> "[H]ere there is no causation issue that evidence of Wise's discipline could rebut. The parties agree that the accident was caused by Bullock's stepping in diesel fuel that Wise had spilled on the locomotive's running board, then attempting to move to another locomotive. Wise does not dispute that he spilled the diesel fuel, nor does Bullock show that BNSF asserted another cause of Bullock's accident that admission of Wise's discipline could rebut." 2015 WL 4879054, at *8.

In Bullock's petition for this court's review, he argues that the panel erred because causation was disputed. He principally refers to an expert witness BNSF did not call to

testify at trial and he cites remarks from his counsel during motions hearings. Neither argument is persuasive because it is a fundamental principle in our justice system that the jury may only consider evidence that is admitted. PIK Civ. 4th 102.03 (2010 Supp.). And counsel's remarks are not evidence. *State v. Bennington*, 293 Kan. 503, 530, 264 P.3d 440 (2011) (noting that remarks made during voir dire, opening statements, or closing arguments are not evidence); see also *Gannon v. State*, 298 Kan. 1107, 1126, 319 P.3d 1196 (2014).

Finally, Bullock cites testimony that BNSF employees could not recreate the slip as described by Bullock given the configuration of the locomotives. Specifically, McNeely testified that he reported to the scene immediately after Bullock was injured. He visited with Bullock to try to determine what happened and then tried to reproduce the injury through a reenactment while the locomotives were in the same position. McNeely testified that the locomotive's coupler prevented him from falling all the way down between the two units. He concluded that he was unable to determine how Bullock could have fallen as he described.

BNSF's counsel's closing argument demonstrates that the McNeely testimony was admitted at least in part to dispute causation:

> "Now, how did he fall? There is only one witness to that incident, and it is Mr. Bullock. And in *judging whether he fell, how he fell, what his body did, what hurt, you again have one source of information*, and that's Mr. Bullock.

> "[Bullock's counsel] said we didn't bring anyone in here to say that it couldn't have happened the way Mr. Bullock described. We didn't need to. Mr. Bullock did that for us. *He sat up and described a series of body movements and contortions that defies physics.* You know, after this accident, and the railroad investigated it, they took Mr. Bullock at his word. They scratched their head, and wondered if it could have happened that way. *They tried to recreate it and they couldn't . . . .*" (Emphases added.)

23

Consequently, the panel erred by holding BNSF did not dispute causation. So we review the merits of Bullock's claim that subsequent remedial measures are admissible to prove that element. We begin by addressing the cases forming his primary reliance for the argument: *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006), and *Wetherill v. University of Chicago*, 565 F. Supp. 1553 (N.D. Ill. 1983).

The panel correctly recognized that *Wetherill* is no longer good law to support Bullock's argument. But it acknowledged that *Brazos* supports his proposition without analyzing the merits of that case. *Bullock v. BNSF Railway. Co.*, No. 111,599, 2015 WL 4879054, at *8 (Kan. App. 2015) (unpublished opinion).

The authorities are split on whether the federal rule, Rule 407, or its analog in our sister states prohibits admission of subsequent remedial measures when admitted to prove causation. Compare *Brazos*, 469 F.3d at 429 (evidence admissible to rebut theory of proximate cause but not to prove culpability in a breach of warranty case), and *Bailey v. Kawasaki-Kisen, K.K.*, 455 F.2d 392, 395-96 (5th Cir. 1972) (evidence of remedial measures admissible in limited circumstances, such as when exclusion resulted in false impression of causation), with *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 853-54, 856, 858-59 (4th Cir. 1980), and *McIntyre v. Colonies-Pacific, LLC*, 228 Cal. App. 4th 664, 673-74, 175 Cal. Rptr. 3d 440 (Cal. App. 2014).

As explained below, we conclude the weight of authority prohibiting admission is more persuasive. And we note this conclusion is consistent with recent trends. See 2 McCormick on Evidence § 267, p. 346 (7th ed. 2013) ("The older cases allowed such evidence to prove that the faulty condition later remedied was the cause of the injury by showing that after the change the injurious effect disappeared, but recent cases are more skeptical that this is an appropriate use of such evidence.").

24

In *Brazos*, a river development authority contracted with the defendants to retrofit equipment used to reduce the water's salt content. Problems occurred after the retrofit that culminated in fires, and Brazos sued for breach of warranty. The defendants argued Brazos caused the fires through poor maintenance, and the district court excluded evidence rebutting that claim under Rule 407. Without much analysis, the Fifth Circuit held that "subsequent remedial measures can be introduced on the issue of causation if that is in controversy," and the evidence should have been admitted. 469 F.3d at 429. The *Brazos* court relied exclusively on the Fifth Circuit's earlier decision in *Bailey*.

In *Bailey*, the issue was whether a falling boom that caused injury dropped because a ship's crew was negligent or if it resulted from some other cause. Plaintiff sought to admit evidence that the boom fell again shortly after he was injured, under conditions which a jury could infer were identical to those existing at the time he was injured. Because the trial judge excluded evidence of repairs done after a second fall as a subsequent remedial measure, the jury knew only that the boom dropped once and had only one explanation for that—the crew's negligence. The Fifth Circuit reversed. Although "the general rule [is] that evidence of subsequent corrective measures is not admissible," the court found this case one of a number of "very limited situations [in which] the policy favoring repair must be subordinated to the necessity for getting at the truth." 455 F.2d at 395-96. The court cautioned that jurors should be instructed as to the purpose for which such evidence is admitted. 455 F.2d at 396.

This analysis stands in contrast to a recent California case, *McIntyre v. Colonies-Pacific, LLC*. California, like Kansas, adopted Uniform Rule of Evidence 51 (1953). Therefore, that state's court considered statutory language virtually identical to the Kansas statute. Leonard, The New Wigmore:  A Treatise on Evidence:  Selected Rules of Limited Admissibility § 2.5, p. 155 n.3 (2002) (comparing California's and Kansas'

25

enactment of Uniform Rule of Evidence 51 (1953) on subsequent remedial measures, noting California differs only in "punctuation and in the substitution of 'inadmissible' for 'not admissible'").

The *McIntyre* court rejected an argument that "negligence" as used in California's subsequent remedial measures rule referred only to the existence of a duty and breach of duty, but not causation. *McIntyre*, 228 Cal. App. 4th at 670-74. The court found the term "negligence" could be interpreted either as meaning only the existence and breach of duty or as including all elements of the tort. The court first considered the history of the statutory provision, which codified common law, and second the public policy behind the provision, which encourages remedial conduct. The court then rejected plaintiffs' argument that subsequent remedial measures should be admissible to establish causation because "[w]hether the issue is couched in terms of the due care or causation aspect of a negligence cause of action, admission of evidence [of subsequent remedial measures] would discourage others similarly situated from undertaking such measures, an outcome that would thwart public policy." 228 Cal. App. 4th at 673.

The California court is not unique in its approach. The United States Court of Appeals for the Fourth Circuit also rejected the argument that an exception should exist for proof of causation, reasoning that such an exception "would promote substance over form and subvert the policy behind excluding evidence of subsequent remedial measures." *Werner*, 628 F.2d at 858-59; see also *Chesapeake Louisiana, L.P. v. Innovative Wellsite Systems, Inc.*, No. 12-2963, 2015 WL 339022, at *2-3 (W.D. La. 2015) (unpublished opinion) (refusing to allow evidence of subsequent remedial measures as proof of causation and distinguishing *Brazos*); *Kendall v. Bausch & Lomb, Inc.*, No. Civ. 05-5066-KES, 2009 WL 1740008, at *8 (D.S.D. 2009) (unpublished opinion) ("The court will not read into Rule 407 an exception for causation, especially in

26

cases where jurors may easily draw inferences from the post-accident remedial measures to a party's negligence or the defectiveness of a product.").

The Supreme Judicial Court of Maine similarly rejected a request to extend an exception to allow evidence of subsequent remedial measures to establish causation:

"Evidence of causation is a necessary element of a negligence claim [citation omitted], and, therefore, any evidence used to prove causation is also used to prove negligence. Thus, evidence of subsequent repairs intended to prove causation *is* evidence offered to prove negligence. The plain language of Rule 407(a) bars use of evidence of subsequent remedial measures to prove negligence." *Freeman v. Funtown/Splashtown*, USA, 828 A.2d 752, 754 (Me. 2003).

We are persuaded by the reasoning of sister courts that the plain meaning of the statute precludes the use of subsequent remedial measures to prove causation—an essential element of the tort of negligence. Thus, as the Maine court concluded, "evidence of subsequent repairs intended to prove causation *is* evidence offered to prove negligence," and as such should be excluded. 828 A.2d at 754. This approach supports the policy underlying K.S.A. 60-451 and similar state and federal rules of evidence:

"The tenable basis for exclusion is, therefore, not lack of probative worth, but the impact of an extrinsic social policy, that of encouraging, or not discouraging, the taking of immediate steps to prevent further harm by the offending instrumentality." 10 Rutgers L. Rev. at 590-91.

*Contributory negligence*

At trial, BNSF claimed Bullock was contributorily negligent. In FELA cases, contributory negligence does not bar an employee's recovery. But it does diminish the amount of recoverable damages "in proportion to the amount of negligence attributable to

such employee." 45 U.S.C. § 53 (2012). Bullock argues, and the district court held, that evidence of Wise's discipline was admissible to prove Bullock was not contributorily negligent. Bullock's apparent strategy was to contrast his lack of discipline with Wise's receipt of discipline in an attempt to show that BNSF—the entity deciding whether discipline is to be imposed—believes only Wise was negligent despite McNeely's report listing two causes for the accident.

Whether subsequent remedial conduct is admissible to rebut a comparative fault defense, *i.e.*, the plaintiff was contributorily negligent, is an issue of first impression for this court. But our Court of Appeals rejected its admissibility for that purpose in *DiPietro v. Cessna Aircraft Co.*, 28 Kan. App. 2d 372, 16 P.3d 986 (2000). There, DiPietro fell into a drainage ditch while examining an airplane. He sued, alleging Cessna was negligent for not providing protective measures. Cessna defended by arguing DiPietro was fully aware of the ditch because it was an open and obvious hazard.

After DiPietro's fall, Cessna erected a fence around the ditch. DiPietro argued that evidence was admissible to rebut Cessna's allegation of his comparative fault, even though it was a subsequent remedial measure. The panel held that exceptions to the general rule "should be allowed with great caution" so the policy will remain intact:  "to encourage potential defendants to remedy hazardous conditions without fear that their actions will be used against them. *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994)." 28 Kan. App. 2d at 378.

With this in mind, the *DiPietro* panel reasoned that "evidence that tends to exculpate plaintiff in a comparative fault case," *i.e.*, rebutting the defendant's claim that plaintiff was contributorily negligent, "places fault upon the defendant, and evidence of

28

subsequent remedial conduct to prove negligence is prohibited by K.S.A. 60-451." 28 Kan. App. 2d at 378.

Bullock attempts to distinguish *DiPietro* because its cause of action did not arise under FELA. He argues FELA cases are different because the employer has control of both employees so the discipline or lack thereof is evidence of who the employer believes was at fault. He cites two older FELA cases: *Panger v. Duluth, W. & P. Ry. Co.*, 490 F.2d 1112 (8th Cir. 1974); and *Hval v. Southern Pacific*, 39 Or. App. 479, 592 P.2d 1046 (1979). Neither case is persuasive.

The *Panger* plaintiff was injured when he jumped from a moving railroad motorcar to avoid an approaching train. He sought to introduce evidence—both that the motorcar operator was disciplined but plaintiff was not—to "negate the Railway's contention that Panger was in sole charge of the work crew and motorcar." 490 F.2d at 1117. In other words, the railway alleged that he was "acting in a supervisory capacity" so that all negligence should be imputed to him. 490 F.2d at 1115.

The court confirmed that the admissibility of evidence of the failure to discipline Panger, *i.e.*, that the Railway failed to find him responsible, was inconsistent with the railway's trial assertion that Panger was solely responsible for the crew and car. In short, this evidence went to the issue of control. And as the panel of our Court of Appeals recognized, "Although *Panger* was decided before the adoption of Rule 407, the rule 'explicitly recognizes that evidence of subsequent remedial measures may be admitted to prove ownership or control of the object or premises causing an injury.' 2 Weinstein's Federal Evidence § 407.04[2]." *Bullock*, 2015 WL 4879054, at *9.

Although not as clear, admission of the evidence of the operator's discipline also appeared to go to the issue of operational control. We reach this conclusion because after

specifically acknowledging Panger used the evidence at trial to negate the contention he was in sole charge of the crew and car, the Eighth Circuit held that on remand, "If plaintiff lays a proper foundation we believe that this evidence, if it does indicate the Railway found someone other than Panger responsible, would be admissible." *Panger*, 490 F.2d at 1117-18.

Our Court of Appeals panel held that control is not in issue in Bullock's case. Because Bullock has not sought our review of that holding, it stands. He is therefore prevented from arguing the evidence is admissible on that unchallenged basis. See Supreme Court Rule 8.03(a)(4)(C) (2017 Kan. S. Ct. R. 54) ("The court will not consider issues not presented or fairly included in the petition [for review].").

The *Hval* court, relying largely on *Panger* as "directly [on] point," held that evidence of one employee's receipt of discipline and the plaintiff's lack of discipline could be admissible if a proper foundation were laid. 39 Or. App. at 485. Unlike *Panger*, the *Hval* court did briefly consider whether such disciplinary evidence should be excluded as a matter of public policy, *i.e.*, as a subsequent remedial measure. And the court held it could be admitted to rebut the employer's claim of plaintiff's comparative or contributory negligence. "[W]e conclude that rule of exclusion is not available where the evidence is used to contradict the assertion at trial that plaintiff was negligent." 39 Or. App. at 486.

The *Bullock* panel reviewed *Hval* and concluded "[o]ur research has located no case citing this statement of the law from *Hval* or any legal authority commenting [on] it." 2015 WL 4879054, at *9. And the panel declined to adopt its reasoning because of its court's policy of adopting exceptions to K.S.A. 60-451 with great caution. 2015 WL 4879054, at *9 (citing *DiPietro*). We have similarly looked for additional support of the *Hval* court's analysis during the past 38 years and have found none.

We conclude that the rationale of *DiPietro* remains valid. Specifically, when a plaintiff argues that the evidence of discipline is admissible to rebut defendant's claim of plaintiff's contributory negligence, this particular use of the evidence can have the effect of proving defendant's negligence, *e.g.*, degree of negligence. We reach this conclusion because negligence is a zero sum game when only two parties are involved. *DiPietro*, 28 Kan. App. 2d at 378 ("Evidence that tends to exculpate plaintiff in a comparative fault case places fault upon the defendant."). Per K.S.A. 60-451, "evidence of such subsequent measures is not admissible to prove [defendant's] negligence or *culpable conduct* in connection with the event." (Emphasis added.) And FELA is a comparative negligence statute. *Bullock*, 2015 WL 4879054, at *9 (citing 45 U.S.C. § 53 [2012]) ("[T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.").

Accordingly, claims of contributory negligence in a FELA case do not relax the requirements of K.S.A. 60-451.

*Harmlessness*

Our holding that the evidence of Wise's discipline was improperly admitted because it was barred by K.S.A. 60-451 brings us to the question of the magnitude of that error. The panel held the error was prejudicial and required remand for a new trial, stating:

> "We find that Bullock has failed to meet his burden of demonstrating harmlessness. We are unable to find that the erroneously admitted evidence of Wise's discipline played no part in the jury's finding Bullock 0% negligent, in light of the

31

emphasis that Bullock placed on that issue during his presentation of the evidence and in his closing argument. We instead find a reasonable probability that without the evidence of Wise's discipline and the attendant arguments, the jury would have apportioned the fault differently. We do not do so lightly, understanding that this trial took 9 days to try and involved multiple witnesses and exhibits and immense amounts of time and labor for all involved. But given the facts of record, we must reverse and remand for a new trial, and vacate the judgment." *Bullock*, 2015 WL 4879054, at *13.

Bullock has not sought review of the panel's harmlessness analysis and holding. So we do not address harmlessness but remand for a new trial. See Supreme Court Rule 8.03(a)(4)(C), (h)(1) (2017 Kan. S. Ct. R. 53).

While Bullock's second issue regarding his counsel's comments during closing argument could now be disregarded because of our reversal and remand on K.S.A. 60-451 grounds, like the panel we will address it to provide guidance for retrial. See *In re Care & Treatment of Foster*, 280 Kan. 845, 861, 127 P.3d 277 (2006) (citing *State v. Kunellis*, 276 Kan. 461, 476, 78 P.3d 776 [2003]).

*Issue 2:        Counsel's statements during closing argument were improper.*

*Additional facts*

During his closing argument to the jury, Bullock's counsel remarked:

"'I can't tell you how important your verdict is, because what a verdict does is it re[s]olves disputes about what's true. It takes the dispute between the two parties about what's true and what's not, and it identifies the truth. That's critically important. And then more importantly, it bestows and renders justice on that dispute. It takes something that was wrong, and it makes it right, and your verdict is going to bring justice. That's incredibly important. I can't tell you how important your role is going to be when you

32

deliberate and you bring back a verdict, whichever way your verdict goes, however your verdict goes.

"Now, I talked about justice. Justice is just an abstract ideal. It is an empty shell. You can't just say, 'I am going to bring justice to bear on this dispute.' Well, what's justice? Where are you coming up with these concepts? *And the answer is, it comes from your values*." (Emphasis added.)

BNSF's counsel objected. During the bench conference, he contended Bullock's counsel was improperly arguing "justice is the values of the community," stating:

"Your Honor, this is the justice is the values of the community argument, which is improper. The decision rendered is based on the facts, not by their own personal views or their own personal stake or the values of the community. I know exactly where this is going, and their sense of justice, they are supposed to follow the instructions and follow the law."

The court overruled the objection. And Bullock's counsel continued with this theme:

"*Justice is an ideal that is given meaning by your values. You decide what justice is based on what you feel and what values you have, and you learn those values within your community*. And your verdict, whatever your verdict is, *the justice you decide upon will reflect your values and the values of this community. It will speak to the values of* how an employer should treat an employee, what kinds of conditions of work and employment . . . *a person in this community is entitled to*, and that's really important stuff." (Emphases added.)

The panel agreed with BNSF that this argument was impermissible. But because it was already reversing and remanding on the K.S.A. 60-451 issue, it declined to address

whether this error was harmless. Bullock petitioned for our review of the panel's analysis and now contends the argument was proper but, if not, it was harmless error.

*Standard of review*

In the criminal law context, this court has clearly established a two-step process to determine whether a prosecutor's comments have created reversible error: error and prejudice. *State v. Kleypas*, 305 Kan. 224, 316, 382 P.3d 373 (2016).

> "[1] To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. [2] If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Our steps for analyzing counsel's comments in the civil context have not been stated that concisely. But our civil caselaw demonstrates several similarities to the criminal arena. See, *e.g.*, *Walters v. Hitchcock*, 237 Kan. 31, 32-33, 697 P.2d 847 (1985) (conducting error and prejudice analysis of counsel's comments in closing argument).

More specifically, as in the criminal context, in civil cases counsel are granted latitude in making arguments. "'This court has consistently followed the general rule against imposing narrow and unreasonable limitations upon argument of counsel made to the jury.'" *Walker v. Holiday Lanes, Inc.*, 196 Kan. 513, 519, 413 P.2d 63 (1966).

And if counsel has exceeded that latitude, *i.e.*, if error is determined to exist, the civil court then determines whether the error prejudiced a party's right to a fair trial:

"Under what circumstances do remarks of counsel result in reversible error? An uncontradictable answer must be: *they are reversible error when, because of them, the parties have not had a fair trial.* Factors necessary to a fair trial are an adequate hearing before an impartial tribunal based on legally admissible evidence relevant to the issues involved, free from bias or prejudice." (Emphasis added.) *Smith v. Blakey, Administrator*, 213 Kan. 91, 96, 515 P.2d 1062 (1973).

See also *In re Foster*, 280 Kan. at 857 (reversing and remanding for new trial in civil case involving Sexually Violent Predators Act because of counsel's improper comment in opening statement and closing argument) (citing *Blakey*).

What has not been clear historically in the civil context is identifying the specific process or test to use for determining reversible error, *i.e.*, when a party has been denied the right to a fair trial. Compare *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (specifying different harmlessness tests in criminal cases for when the error infringes upon a right guaranteed by the United States Constitution and when it does not). But clarity recently was provided by this court in several civil matters. See, *e.g.*, *Siruta v. Siruta*, 301 Kan. 757, 772, 348 P.3d 549 (2015) (wrongful death); *Foster v. Klaumann*, 296 Kan. 295, 305, 294 P.3d 223 (2013) (medical malpractice).

In *Siruta*, we found the trial court erred in allowing two jury instructions over the plaintiff's objection and in declining to provide one he requested. As our standard of review we cited the criminal case of *Ward*, 292 Kan. at 569—so reversal of a civil jury verdict is appropriate when "there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record." *Siruta*, 301 Kan. at 772-73. This particular test from *Ward* was based in large part upon K.S.A. 60-261—an "error consequence" statute that has been applied not only to civil cases but also those criminal cases not involving federal constitutional rights. 292 Kan. at 552-66.

The particular *Ward* reasonable probability test has not been applied by this court to claims of improper argument in civil cases. But our caselaw demonstrates this basic standard has been applied in such situations. As we said more than 30 years ago "[t]o constitute reversible error there must be a *likelihood* that the improper remarks *changed the result* of the trial." (Emphases added.) *Walters*, 237 Kan. at 33 (citing *State v. Dill*, 3 Kan. App. 2d 67, 589 P.2d 634 [1979]); accord *Sledd v. Reed,* 246 Kan. 112, 117, 785 P.2d 694 (1990) (citing *Walters)*; see also *Walker*, 196 Kan. at 519 (Counsel's closing arguments "refer to matters clearly outside the evidence, and under the circumstances were reasonably calculated, and *their probable effect* was, to produce a prejudicial attitude on the part of the jury toward the plaintiff.") (Emphasis added.); *Taylor v. F.W. Woolworth Co.*, 151 Kan. 233, 242, 98 P.2d 114 (1940) ("the only purpose and the *probable effect* of the improper comments . . . were to produce a prejudicial attitude toward the defendant on the part of the jury and thus prevent a fair and impartial trial"). (Emphasis added.)

Accordingly, *Ward*'s reasonable probability test is applicable to Bullock's assertion that no prejudicial error occurred in his counsel's closing argument.

*Analysis*

The panel held counsel's comments were improper on two grounds. First, he was inviting the jury to decide the case based on the juror's subjective feelings of what amounts to justice instead of the rule of law provided in the instructions. Second, he appealed to community interests and argued the verdict could negatively impact the community. *Bullock*, 2015 WL 4879054, at *16-17. We agree with the panel's well-reasoned analysis and draw heavily from it.

36

We disapproved of an instruction that encouraged the jury to act on their feelings about what was fair in *State v. McClanahan*, 212 Kan. 208, 215-16, 510 P.2d 153 (1973). The instruction stated:

> "'[I]t is difficult to draft legal statements that are so exact that they are right for all conceivable circumstances. Accordingly, you are entitled to act upon your conscientious feeling about what is a fair result in this case and acquit the defendant if you believe that justice requires such a result.'" 212 Kan. at 209.

The *McClanahan* court explained that this instruction was troubling both in theory and in practice because the jury's duty is to follow the law—after the court has defined it. We held:

> "The tenor of the instruction militates against our generally accepted law as to the diverse functions of court and jury. The instructions to the jury should fairly and impartially set forth the law to govern the jury in its deliberations. . . . *The administration of justice cannot be left to community standards or community conscience but must depend upon the protections afforded by the rule of law*. The jury must be directed to apply the rules of law to the evidence even though it must do so in the face of public outcry and indignation. Disregard for the principles of established law creates anarchy and destroys the very protections which the law affords an accused." (Emphasis added.) 212 Kan. at 215-16.

Bullock's jury argument is troubling for the same reasons. *McClanahan* was concerned about "community standards or community conscience" because such language suggested the jury could improperly decide the case based on something other than the law contained in the instructions. 212 Kan. at 216. And Bullock's counsel made a similar argument by telling the jury it could achieve justice based on "community values":

"You decide what justice is based on what you feel and what values you have, and you learn those values within your community. And your verdict, whatever your verdict is, the justice you decide upon will reflect your values and the values of this community."

We similarly disapprove of counsel's related comments that the jury's verdict would "speak to the values of how an employer should treat an employee, what kinds of conditions of work and employment . . . *a person in this community is entitled to*." (Emphasis added.) Juries are tasked with deciding cases based on the evidence presented by counsel and the law instructed by the court, not with protecting their communities through their verdicts. See *State v. Finley*, 273 Kan. 237, 245, 42 P.3d 723 (2002) (It is improper to "appeal to community interests" by arguing a verdict "would have some sort of negative impact on the community."). As the panel explained:

> "'[T]his remark could appeal to passion or prejudice by encouraging the jury to consider the good of the community rather than the merits of the case. See *In re Walker v. Holiday Lanes*, 196 Kan. 513, 519, 413 P.2d 63 (1966) (finding improper a statement that a plaintiff's verdict would hurt the reputation of the locality and drive businesses away because it referred 'to matters clearly outside the evidence and under the circumstances were reasonably calculated, and their probable effect was, to produce a prejudicial attitude on the part of the jury towards the plaintiff'); *Ward*, 35 Kan. App. 2d at 378 (holding an argument which could appeal 'to the jurors' personal fears for the safety of the community's children or their own children' was 'highly improper'); *City of Dodge City v. Ingram*, 33 Kan. App. 2d 829, 840, 109 P.3d 1272 (2005) (finding reversible error in prosecutor's telling the jury it was the "'conscience of the community,"' and suggesting if the jury did not find the defendant guilty, the police could no longer take action in similar cases; the remarks were improper because they were not based on the evidence and could appeal to the passion and prejudice of the jury)." *Bullock*, 2015 WL 4879054, at \*18.

Bullock argues these particular jury argument prohibitions have been limited to the criminal law context and should not be extended to civil cases. But as mentioned, the general goal is the same in civil cases as it is in criminal:  to provide fair trials to the

litigants. See *Smith*, 213 Kan. at 96. Consistent with that same fair trial goal, this court has previously extended its prohibition of particular improper closing arguments in criminal cases to the civil context. In a medical malpractice case, this court held:

> "'In argument to the jury the prosecutor should not use statements calculated to inflame the passions or prejudices of the jury. He should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.'" *Sledd*, 246 Kan. at 116 (quoting *State v. Kelley*, 209 Kan. 699, Syl. ¶ 4, 498 P.2d 87 [1972]).

The *Sledd* court relied upon this criminal law language to rule as inappropriate the defense counsel's closing argument—that if the jury did not find the defendant doctor free of negligence there would be no one to treat the jurors.

Based upon these authorities, we hold those comments of Bullock's counsel in closing argument were inappropriate. Because we are already reversing and remanding on the K.S.A. 60-451 issue, we do not need to decide whether the error requires reversal. But counsel is prohibited from making such arguments to the jury on remand. See *In re Foster*, 280 Kan. at 861 ("On retrial, such statements by counsel and associated evidence are prohibited.").

## CONCLUSION

Evidence of Wise's discipline should have been excluded under K.S.A. 60-451. And certain comments made by Bullock's counsel during his closing argument should not have been allowed. Because the evidentiary error alone is reversible, the Court of

Appeals decision reversing the district court is affirmed; the judgment of the district court is reversed; and the case is remanded to the district court for a new trial.

LUCKERT, J., not participating.